## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**DARRELL DENNIS**                                                      **PETITIONER**

**V.**                          **NO. 4:21-CV-00037-JM-ERE**

**DEXTER PAYNE, Director**
**Arkansas Division of Correction**                          **RESPONDENT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent

to United States District Judge James M. Moody, Jr. You may file written objections

to all or part of this Recommendation. If you do so, those objections must: (1)

specifically explain the factual and/or legal basis for your objection; and (2) be

received by the Clerk of this Court within fourteen (14) days of the entry of this

Recommendation. The failure to timely file objections may result in waiver of the

right to appeal questions of fact.

## I.    BACKGROUND

Petitioner Darrell Dennis, an inmate at the Arkansas Division of Correction

("ADC"), brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. *Doc. 2.*

In Pulaski County, Arkansas, a jury convicted Mr. Dennis of capital murder, two

counts of aggravated robbery, and two counts of kidnapping.[1] He was sentenced to

life in prison, without parole.

---

[1] *State v. Dennis*, Pulaski County Circuit Court, No. 60CR-13-2207.

The Arkansas Supreme Court outlined the facts of the case:

[D]uring the early morning hours of May 10, 2013, Forrest Abrams drove his red Chevrolet Tracker to the Golden Foods store located at 12th and Woodrow Streets in Little Rock so that Tyler Hodges could purchase cigarettes. On the parking lot, Hodges encountered a man whom he did not know and who asked Hodges for money. After buying the cigarettes, Hodges returned to Abrams's vehicle and entered the back seat. The man who had asked Hodges for money spoke with Abrams and then got into the front passenger seat of the Tracker. Abrams drove out of the parking lot and engaged in a conversation with the man about purchasing drugs. Not long thereafter, the man pointed a gun at Abrams and demanded that Abrams change places with him in the vehicle. Abrams complied, and the man drove the Tracker to a place on a street where they were met by two young black males. The men confiscated Abrams's and Hodges's wallets and forced them into another vehicle.

The man encountered at the Golden Foods store drove this second vehicle to a bank where he tried, unsuccessfully, to use Hodges's debit cards in the ATM. According to Hodges, the man became "very mad"; to placate him, Hodges told the man that he had money at his cousin's house on Booker Street. When they arrived at that location, the man told Hodges that he was holding Abrams as "collateral" and that he would kill Abrams if there was any "funny stuff." One of the younger males escorted Hodges at gunpoint to the front door of the home. When his cousin came to the door, Hodges managed to escape by quickly going inside the house. Hodges called 911 to report what had occurred.

Officer Eddie Seaton of the Little Rock Police Department responded to a call at 5:05 a.m. alerting of shots fired and a "man down" on the roadway at 11th and Woodrow Streets. There, he found Abrams, who was deceased, having been shot four times in the back. Officer Kelly Lapore located Abrams's red Tracker at 8:30 a.m. at the intersection of Abigail and Charles Bussey Streets. The cover for the gas tank was open, and a nozzle from a gas can was inserted into the tank. Officers found a gas can nearby. Inside the Tracker, officers also discovered a note pad that had the word "Red" written on it along with a phone number.

Detective Tommy Hudson investigated the homicide. Based on information provided by Hodges, he obtained still photographs from the bank taken at the ATM during the transactions involving Hodges's debit cards, which occurred at 4:36 a.m. The photos captured a vehicle, a tan Geo Prizm, as well as the driver of the car. From the photographs, Hodges identified the driver as the man from Golden Foods who had held him and Abrams at gunpoint and had kidnapped them. Hudson disseminated photographs of the driver throughout the police department. He later received information from another officer that a confidential informant had identified Dennis as the driver of the Prizm. Hudson subsequently prepared a photographic spread for Hodges to view. Hodges selected Dennis's photograph from the array.

The police located the Geo Prizm on May 22, 2013. This vehicle belonged to Edgar Brown, a homeless man who routinely slept in the car on an empty lot at the corner of 24th and Maple Streets. Edgar told Hudson that he was awakened on the morning of May 10, 2013, by two young black males. The males, whom he did not recognize, informed him that "Red" had run out of gasoline on Abigail Street, and they asked Brown to take fuel to "Red." Brown stated that he drove to that street and that he saw two white males in a vehicle with "Red." When he was walking to the vehicle, a red Tracker, he saw that one of the white men, referring to Hodges, appeared to be frightened. Brown said that as he was putting gas in the tank, "Red" got into the driver's seat of the Prizm. Brown protested, and as he approached his vehicle, someone struck him in the head from behind. Brown ran away, but two young men caught up with him and demanded at gunpoint that he turn over the key to the Prizm. Brown threw the key and ran. He said that "Red" returned the Prizm to him later that morning at the empty lot. Hudson also showed Brown a photo array, and Brown selected the photo of Dennis as the man, whom he knew as "Red," who had taken his car.

Based on the investigation, the police arrested Dennis on May 23. On June 5, 2013, Alvin Cooper, a long-time informant, contacted Hudson. Cooper advised Hudson that he was on the parking lot of the Golden Foods store purchasing gas for his Suburban the morning of the abduction and that he saw there an acquaintance of his named "Red." Hudson showed Cooper a photo lineup, and Cooper chose the photo of Dennis as the man whom he knew as "Red." Hudson had also obtained videos from the store. The videos were of poor quality and "jumped

around" from frame to frame. During his testimony about the video footage, Hudson stated that he could not confirm that anyone got into the Tracker and that he could not say whether someone did not. However, the video placed Abrams's Tracker and Cooper's Suburban at the store during the same time frame.

Cooper died before the trial. The prosecution moved to admit Cooper's testimony from the pretrial hearing on Dennis's motion to suppress the results of the photographic lineup viewed by Cooper. The circuit court granted that request over Dennis's objection, and a transcript of Cooper's testimony from the hearing was read to the jury. Essentially, Cooper testified that he saw Dennis on the parking lot standing by the passenger side of a Tracker and that he called out to him but that Dennis did not respond. He also acknowledged that he had been paid for providing this information to the police. Before the jury, the parties stipulated that Cooper had previous convictions of possession of cocaine; two counts of hot-check violations; theft of property; and felon in possession of a firearm.

At the trial, the State also offered the testimony of Sylvester Williams. Williams had been in the Pulaski County jail with Dennis, and Williams testified that Dennis told him that he was going to beat the charges due to lack of evidence because the camera from the store did not reflect his presence. Williams also testified that Dennis expressed regret for not killing the other victim.

*Dennis v. State*, 503 S.W.3d 761, 763–65 (Ark. 2016).

In his direct appeal, Mr. Dennis argued: (1) the trial court denied his right to self-representation under state and federal law; (2) the trial court deprived him of state and federal rights to confront and cross-examine Mr. Cooper; and (3) the trial court denied his right to effective assistance of counsel by failing to relieve his trial attorney for a conflict of interest. *Doc. 13-2*. The Arkansas Supreme Court rejected each claim. *Dennis v. State*, 503 S.W.3d 761 (Ark. 2016).

On January 11, 2017, Mr. Davis filed a Rule 37 petition for postconviction relief with the trial court. In the petition, he asserted his counsel provided constitutionally ineffective assistance by failing to: (1) seek a continuance; (2) investigate and use impeachment evidence; (3) object to false testimony; (4) subpoena store clerk Johnny Reeves; (5) subpoena Gina and Jordan Bailey[2] and impeach Mr. Hodges regarding Ms. Bailey's statements about Carlos Reese and Mr. Abrams; (6) use the 911 tape to impeach Mr. Hodges; (7) impeach Mr. Brown about the fact that he did not own the Prizm; (8) establish that Detective Hudson's emails and testimony identifying Mr. Dennis were "rigged"; (9) impeach Mr. Williams and Ms. Lisa Warner regarding jail policies; (10) impeach Mr. Hodges regarding the 911 call and its alleged inconsistency with Mr. Abrams' time of death; (11) impeach Officer Cassandra Davis regarding a statement in the newspaper related to the line of events; (12) point out that Mr. Hodges did not say in his 911 called that he had to switch cars; (13) obtain an LSD expert to impeach testimony from Mr. Hodges, who had taken LSD the night of the kidnapping and murder; (14) request a curative instruction when the prosecution allegedly vouched for its own witnesses; (15) object or seek a curative instruction when Detective Hudson testified that he believed Mr. Dennis had murdered Mr. Abrams; (16) object to statements by the medical

---

[2] The Baileys, Mr. Hodges' aunt and cousin, lived at the Booker Street house and were home the night the Mr. Hodges was taken there, at gunpoint, to get money.

examiner; and (17) request a special prosecutor. *Doc. 13-3.* On April 20, 2018, the court denied the petition. *Doc. 13-4.* On January 23, 2020, the Arkansas Supreme Court denied his appeal. *Dennis v. State*, 592 S.W.3d 646 (Ark. 2020).

On January 14, 2021, Mr. Dennis filed the § 2254 habeas petition now before the Court. *Doc. 2.* He asserts the following trial court errors: (1) the trial court denied his right to self-representation; (2) the trial court denied his right to confront and cross examine Mr. Cooper; (3) the trial court denied his right to conflict-free counsel; (4) the prosecution violated his right to counsel under *Massiah v. United States*, 377 U.S. 201 (1964),[3] by using Mr. Williams' testimony; (5) the trial court forced him to choose between conflicted counsel and self-representation at a March 3, 2015 hearing; (6) the trial court exercised judicial bias; and (7) the prosecution struck jurors in violation of *Batson v. Kentucky*, 476 U.S. 79(1991).[4]

---

[3] In *Massiah v. United States*, 377 U.S. 201 (1964), the United States Supreme Court held that incriminating statements deliberately elicited by federal agents, in the absence of a defendant's lawyer and after the criminal proceedings have begun, violates the Constitution and renders the statements inadmissible. Mr. Dennis argues that his right to counsel was violated when the prosecution used Mr. Williams' testimony in which he recounted an incriminating, jailhouse statement by Mr. Dennis. *Doc. 3 at 63*. Mr. Dennis also asserts a related ineffective assistance of trial counsel claim, faulting his attorney for failing to object to Mr. Williams's testimony as inadmissible under *Massiah*. *Id*.

[4] In *Batson v. Kentucky*, 476 U.S. 79 (1986), the United States Supreme Court held that parties may not use preemptory challenges to exclude potential jurors based on their sex, race, ethnicity, or religion. Mr. Dennis claims that the prosecution struck black jurors in violation of *Batson* and that his attorney provided ineffective assistance by failing to challenge the strikes under *Batson*. *Doc. 3 at 70*.

Mr. Dennis also asserts ineffective assistance of counsel claims based on his trial counsel's failure to: (1) seek a continuance; (2) subpoena Johnny Reeves and use the surveillance video from the convenience store; (3) subpoena Gina and Jordan Bailey; (4) use the 911 tape to impeach witnesses; (5) object and impeach Detective Hudson and Mr. Hodges regarding their identification of Mr. Dennis; (6) investigate Mr. Williams' allegedly false testimony; (7) establish that Mr. Hodges and Mr. Abram's were not at the house on Booker Street; (8) call Officer Williams regarding the time line; (9) object when the state vouched for its witnesses; (10) ask for an independent prosecutor; (11) move to suppress Mr. Williams' statement pursuant to *Massiah*; and (12) challenge the prosecution's jury strikes under *Batson. Doc. 2.*

On March 1, 2021, Respondent filed a response arguing that Mr. Dennis' claims should be denied because they were either correctly adjudicated or are procedurally defaulted. *Doc. 13*. On April 23, 2021, Mr. Dennis filed a reply. *Doc. 17.*

## II.    DISCUSSION

### A.    Issues Fairly Presented to the State Court

The claims related to self-representation, the confrontation clause, and conflict-free counsel were all fairly presented to the state court and are properly

before the Court for habeas review. A doubly deferential standard of review, imposed by 28 U.S.C. § 2254(d),[5] controls this Court's merits review of these claims.

### 1.    The Arkansas Supreme Court Correctly Rejected the Self-Representation Claim

Mr. Dennis asserts that his requests to represent himself were wrongly denied by the trial court. The Arkansas Supreme Court affirmed the trial court, but noted the following:

> Dennis's point is well taken that the circuit court focused on the irrelevant concerns of his level of education and technical legal knowledge in its ruling at the August 2014 hearing. The court's overall remarks are troubling because the court emphasized the unsoundness of Dennis's waiver rather than the question whether the assertion of the right to self-representation was knowingly and intelligently made.

*Dennis v. State*, 503 S.W.3d at 767.  However, the appellate court found that there was "no reversable error because Dennis did not unequivocally invoke the right to self-representation." *Id*. The Arkansas Supreme Court noted that at an April 10, 2014 hearing, Mr. Dennis asked to proceed *pro se*, and the trial court took it under advisement until Mr. Dennis could have a competency evaluation. After the evaluation, Mr. Dennis raised the issue several more times. The Arkansas Supreme Court noted that Mr. Dennis sought to replace his lawyer and the court granted it,

---

[5] A writ of habeas corpus cannot be granted unless an inmate can show that the state court decision: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

and when Mr. Dennis became disgruntled with new counsel, the trial court appointed stand-by counsel. Eventually, "Dennis openly eschewed his earlier request to proceed *pro se* and without counsel." *Dennis v. State*, 503 S.W.3d at 768.

*Faretta v. California*, 422 U.S. 806 (1975) provides the clearly established federal law applicable to Mr. Dennis' self-representation claim. For a defendant to represent himself, he must "'knowingly and intelligently' forgo those relinquished benefits . . . associated with the right to counsel." *Id.* at 835. The defendant should be made aware of the "dangers and disadvantages of self-representation" but "his technical legal knowledge . . . [is] not relevant to an assessment of his knowing exercise of the right to defend himself." *Id.* at 835-36.

The record supports the state court rulings that Mr. Dennis, who proved quite recalcitrant on this issue, failed to unequivocally invoke his right to self-representation. At an April 10, 2014 hearing, he stated, "As of right now, I'm, I'm invoking my right to representing myself. I won't be needing Mr. James anymore on my case." *Doc. 13-8 at 39.* However, the trial court deferred ruling until Mr. Dennis completed a competency evaluation.

On August 12, 2014, after Mr. Dennis returned from the evaluation, the trial court held a hearing and addressed Mr. Dennis' motion to represent himself. *Id. at 52.* The trial court asked Mr. Dennis a series of questions to ascertain whether his waiver of counsel was knowing and intelligent. *Id. at 52-60.* During that inquiry,

9

Mr. Dennis said, "I'm to the point where I don't want to represent myself, but I feel like I'm in a position where I almost have to." *Id. at 59 of 303*. The trial court responded, "[I]t would be my impression that, that it would be a constitutional violation of your rights if I, if I let you represent yourself." *Id. at 60.* Mr. Dennis repeated: "I'm in a position I don't want to represent myself . . . but I know I have a constitutional right to waive counsel . . . and I don't want to do that . . . [but] I don't feel like I've had an attorney in this case since this case has been in this court. *Id. at 62.* After listening to Mr. Dennis' responses, the trial court denied his motion to represent himself. *Id. at 63, 71*.

On December 19, 2013, following a suppression hearing, the trial court noted that "it's going to take a lawyer with skill to defend this case, and that [it] was even more convinced after this hearing that [Mr. Dennis] would not be able to adequately represent himself." *Id. at 248 of 303*.

At a September 4, 2014 hearing, Mr. Dennis again brought up the issue of self-representation. *Id. at 250-252.* When the court asked him directly if he wanted to represent himself, Mr. Dennis responded "No, sir, I want appointment of two counsels, two new counsels to represent me in this Capital Murder case." *Id. at 258.* Mr. Dennis later said that if he had to go to trial with his current lawyer, he would rather represent himself (*Id. at 260)*, and the trial court decided to appoint a new lawyer for Mr. Dennis. *Id. at 267.*

Mr. Dennis again filed papers raising his right to self-representation. *Doc. 13-8 at 278.* At a March 5, 2015 hearing, the trial court stated that it was going to grant Mr. Dennis' wish, allow him to represent himself, and appoint stand-by counsel to assist him. *Id. at 279-80 of 303.* At that point, Mr. Dennis began what can only be described as gamesmanship (whether to muddy the self-representation issue or have the trial continued is not clear) by arguing that the trial court's previous rulings denying his request for self-representation should stand, because he had not renewed his motion, and he accepted the previous denials. *Id. at 278-301.* Yet, later, Mr. Dennis said, "I'm not going to take this case without counsel." *Id. at 288 of 303.* Ultimately, when Mr. Dennis was asked to indicate "yes or no" regarding whether he wanted to represent himself, he responded "I'm trying to figure out how would I . . . be able to prepare for trial?  I don't know." *Id. at 301 of 303.* Mr. Dennis went to trial with counsel, and nothing in the record shows that he raised the issue again.

It is clear that Mr. Dennis never unequivocally and knowingly waived his right to counsel. He wanted appointed counsel of his choice, and he wanted him to pursue the case to his liking.  Each time he was asked directly if he intended to represent himself, he demurred, muddying the issue. Accordingly, Mr. Dennis cannot demonstrate that the Arkansas Supreme Court's rejection of his self-representation argument involved an unreasonable application of federal law.

## 2.    The Arkansas Supreme Court Correctly Rejected the Confrontation Clause Claim

Mr. Dennis asserts that the trial court violated the Confrontation Clause when it admitted into evidence pre-trial testimony of a deceased witness. Mr. Alvin Cooper was an eyewitness at the convenience store the night the events took place. During a suppression hearing, Mr. Cooper testified under oath regarding what he saw, and was cross-examined by Mr. Dennis' lawyer. Mr. Cooper died before trial, so the trial court allowed the prosecution to use the prior, sworn testimony.

The Arkansas Supreme Court correctly noted that the United States Supreme Court has held, "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). Because he was dead, Mr. Cooper was unavailable for trial. Additionally, Mr. Dennis' lawyer had the opportunity to cross-examine Mr. Cooper at the suppression hearing. The issue was correctly resolved based on United States Supreme Court precedent. Accordingly, Mr. Dennis cannot demonstrate that the Arkansas Supreme Court's rejection of his Confrontation Clause claim involved an unreasonable application of federal law.

### 3.    The Arkansas Supreme Court Correctly Rejected the Conflict-Free Counsel Claim

Clearly established federal law applies to Mr. Dennis' claim that the trial court violated his right to conflict-free counsel by appointing Tom Devine to represent him at trial. "Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). However, any conflict of interest with counsel "must be actual, not merely theoretical," which means there must have been some actual adverse effect on the defendant's case." *Simmons v. Lockhart*, 915 F.2d 372 (8th Cir. 1990).

The Arkansas Supreme Court noted that Mr. Dennis failed to "identify the purported conflict of interest" and "allege[] or demonstrate[] prejudice resulting from Devine's representation." *Dennis v. State*, 503 S.W.3d at 770. The Court agrees.

Initially, Mr. Devine and Julia Jackson were appointed to represent Mr. Dennis. Based on Ms. Jackson's representation in a different case, Mr. Dennis sought to disqualify her. Citing the fact that Mr. Devine worked in the same office with Ms. Jackson, Mr. Dennis also alleged Mr. Devine had a conflict and should be relieved as counsel. *Doc. 13-8 at 16-20 of 303*. The trial court granted Mr. Dennis'

request, but did not rule that there was an actual conflict.[6] Notably, these events occurred before Mr. Dennis began his repeated complaints about every lawyer appointed to represent him.

Mr. Dennis asserts that Mr. Devine's conflict interfered with his ability to represent Mr. Dennis at trial. Yet, Mr. Dennis points to nothing specific to support his conclusory assertion.[7] At its core, Mr. Dennis' argument is that because the trial court initially removed Mr. Devine and Ms. Jackson as counsel, there must have been a conflict. This is incorrect. The trial court never made such a finding but was responding to the first of Mr. Dennis' multiple efforts to disqualify the lawyers appointed to defend him. Additionally, Mr. Dennis fails to identify any specific prejudice resulting from Mr. Devine's representation, and the Court finds none in the record. Accordingly, Mr. Dennis cannot demonstrate that the Arkansas Supreme Court's rejection of his conflict-free counsel claim involved an unreasonable application of federal law.

---

[6] At a March 10, 2015 hearing, Mr. Devine asserted that he thought he and his office had a "clear conflict representing Mr. Dennis at this point in time." *Doc. 13-9 at 12 of 302*. However, the court expressly found no conflict of interest. *Id. at 16 of 302*.

[7] *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) ("In order to prove that an actual conflict hindered petitioner's lawyer's performance, petitioner must make a factual showing of inconsistent interests or point to specific instances in the record to suggest an actual impairment of his or her interests.") (internal quotations and citations omitted).

**B.    Issues Fairly Presented to the State Court in Rule 37 Petition**

Defendant raised the following ineffective assistance claims in his Rule 37 petition based on his lawyer's failure to: (1) seek a continuance; (2) investigate and use impeachment evidence; (3) object to false testimony; (4) subpoena store clerk Mr. Reeves; (5) subpoena Gina and Jordan Bailey and impeach Mr. Hodges regarding his Ms. Bailey's statements about Carlos Reese and Mr. Abrams; (6) use the 911 tape to impeach Mr. Hodges; (7) impeach Mr. Brown about the fact that he did not own the Prizm; (8) establish that Detective Hudson's emails and testimony identifying Mr. Dennis were "rigged"; (9) impeach Mr. Williams and Ms. Lisa Warner regarding jail policies; (10) impeach Mr. Hodges regarding the 911 call and Mr. Abrams' time of death; (11) impeach Officer Cassandra Davis regarding a statement in the newspaper related to the line of events; (12) point out that Mr. Hodges did not say in his 911 called that he had to switch cars; (13) obtain an LSD expert to impeach testimony from Mr. Hodges, who had taken LSD the night of the kidnapping and murder; (14) request a curative instruction when the prosecution allegedly vouched for its own witnesses; (15) object to or seeking a curative instruction when Detective Hudson stated that he believed Mr. Dennis murdered Mr. Abrams; (16) object to statements by the medical examiner; and (17) request a special prosecutor. *Doc. 13-3.* On April 20, 2018, the court rejected the claims and the ruling was affirmed on appeal. *Dennis v. State*, 592 S.W.3d 646 (Ark. 2020).

15

To prevail on Sixth Amendment ineffective assistance of counsel claim, a habeas petitioner must first show that his lawyer's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must identify the acts or omission of counsel that are alleged to have been the result of unreasonable professional judgment. *Id.* at 690. Then, the Court must determine whether, considering all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. A petitioner faces a great burden in that "judicial scrutiny of a counsel's performance is highly deferential" and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689; *Driscoll v. Delo*, 71 F.3d 701, 706 (8th Cir. 1995).

If a petitioner establishes deficient performance by counsel, he must then establish prejudice. *Strickland*, 466 U.S. at 694. This requires a petitioner to demonstrate that, but for his counsel's errors, there is a reasonable probability the result of the proceeding would have been different. *Id.* ("A reasonable probability is a probability sufficient to undermine confidence in the [proceeding's] outcome."); *Larson v. United States*, 833 F.2d 758, 759 (8th Cir. 1987).

So, the test has two prongs: (1) deficient performance, and (2) prejudice. If a petitioner fails to establish either prong of this test, the Court need not consider the remaining prong.

Here, the Court finds that it is "unnecessary to discuss the reasonableness of counsel's conduct because, given the overwhelming evidence of [Mr. Dennis's] guilt presented at trial . . . it would be impossible for him to demonstrate prejudice under *Strickland*."[8] *Reed v. Norris*, 195 F.3d 1004, 1006 (8th Cir. 1999). The evidence supporting Mr. Dennis' guilt includes the following: (1) the day after the murder, and again at trial, Mr. Hodges identified Mr. Dennis as the person who kidnapped him;[9] (2) Mr. Hodges identified the Prizm from the ATM video as the one that he was kidnapped in;[10] (3) Mr. Cooper testified that he saw Mr. Dennis talking to the victims the night of the kidnapping and murder, and a video from the convenient store corroborated the fact that Mr. Cooper was at the store that night;[11] (4) the ATM video showed Mr. Dennis attempting to use the victim's debit card;[12] (5) a card with Mr. Dennis' name and number on it was found in the victim's car;[13] (6) Mr. Davis identified Mr. Dennis as the person who took his Prizm without permission and

---

[8] See *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed").

[9] *Doc. 13-12 at pp. 1986-1988*; *Doc.* 13-11 *at p. 1670.*

[10] *Doc. 13-10 at p. 1410.*

[11] *Doc. 13-12 at pp. 2038-2056.*

[12] *Doc. 13-10 at p. 1404.*

[13] *Doc. 13-12 at p. 1952.*

returned the car later that morning; (7) Mr. Davis identified Mr. Dennis as the person in his Prizm in the ATM video;[14] (8) Mr. Davis picked Mr. Dennis from a photo lineup; (9) Mr. Davis identified Mr. Dennis as the person who was in the red Tracker with the victims.[15] In light of this evidence, Mr. Dennis' focus on issues related to failed impeachment or trial strategy makes it impossible for him to demonstrate prejudice. *Sawyer v. Whitley*, 505 U.S. 333, 334 (1992) ("Latter-day impeachment evidence seldom, if ever, makes a clear and convincing showing that no reasonable juror would have believed the heart of the witness' account.").

Additionally, the Arkansas Supreme Court noted that Mr. Dennis' grievances failed because they involved trial strategy, meritless objections, and improper arguments for a Rule 37 petition. The Court agrees. Accordingly, Mr. Dennis cannot demonstrate that the Arkansas Supreme Court's rejection of his ineffective assistance of counsel claim involved an unreasonable application of federal law.

### C.    Mr. Dennis' Remaining Claims Are Procedurally Defaulted

Respondent contends that Mr. Dennis' remaining claims are procedurally defaulted. The Court agrees.

In his habeas petition, Mr. Dennis raises the following issues for the first time: (1) the prosecution violated his right to counsel under *Massiah* by using Mr.

---

[14] *Id. at pp. 1602-1606.*
[15] *Id. at p. 1614.*

Williams' testimony, and trial counsel provided ineffective assistance by failing to object; (2) the trial court forced him to choose between conflicted counsel and self-representation at a March 3, 2015 hearing; (3) the trial court exercised judicial bias; and (4) the prosecution struck jurors in violation *Batson*, and his trial counsel provided ineffective assistance by failing to challenge the strikes.

Before filing a § 2254 habeas petition, a state inmate must "fairly present" the substance of each federal habeas claim at the state court level. *Murphy v. King*, 652 F.3d 845, 848 (8th Cir. 2011); 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State"); *Perry v. Kemna*, 356 F.3d 880, 886 (8th Cir. 2004) ("To avoid a procedural default, a habeas petitioner must 'present the same facts and legal theories to the state court that he later presents to the federal courts.'"); *Miller v. Lock*, 108 F.3d 868, 871 (8th Cir. 1997) ("[B]oth the factual grounds and legal theories on which the claim is based must have been presented to the highest state court in order to preserve the claim for federal review.").

When a petitioner fails to fully exhaust his claims in state court and the time for doing so has expired, his claims are procedurally defaulted. *Murphy*, 652 F.3d at 849. Federal review of procedurally defaulted claims is barred unless the prisoner can demonstrate: (1) "cause for the default and actual prejudice as a result of the

alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice," that is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Mr. Dennis' four trial error claims are procedurally defaulted because he failed to raise each claim at trial *and* on direct appeal.

Ineffective assistance of counsel may be "cause" to excuse a procedurally defaulted trial error claim. However, a claim of ineffective assistance must be presented to the state court as an independent claim *before* it can be used to establish cause for a procedurally defaulted trial error claim. *Williams v. Kemna*, 311 F.3d 895, 897 (8th Cir. 2002) (citing *Murray v. Carrier*, 477 U.S. 478, 481-81 (1986)).

In his habeas petition, Mr. Dennis raises, for the first time, ineffective assistance claims related to *Massiah* and *Batson* violations. Because these claims were not presented in Mr. Dennis' Rule 37 petition, they are procedurally defaulted. While potentially subject to the equitable exception created by *Martinez v. Ryan*[16] to excuse the default, Mr. Dennis fails to state a *substantial* ineffective assistance of counsel claim capable of excusing his procedural default. This requires him to demonstrate that each claim: (1) has "some merit;" and (2) is supported by at least some facts. *Martinez*, 566 U.S. at 14.

---

[16] 566 U.S. 1 (2012).

First, no *Massiah* violation occurred. Other than Mr. Dennis' conclusory statements, he offers no evidence or testimony that the prosecution asked Mr. Williams to get incriminating statements from Mr. Dennis. In fact, the trial testimony indicated that Mr. Dennis and Mr. Williams were hanging out together commenting about their cases. *Doc. 13-10 at 277-280 of 302*. Second, Mr. Dennis' trial counsel *did*, in fact, raise the *Batson* issue, but the trial court rejected it. *Doc. 13-9 at 272-274.* Mr. Dennis fails to explain what winning argument his counsel should have made.

Accordingly, Mr. Dennis' procedural default bars this Court from considering the merits of his remaining trial error and ineffective assistance of counsel claims.

## III. CONCLUSION

For the reasons set out above, it is RECOMMENDED that:

1.    Petitioner Darrell Dennis' § 2254 Petition for Writ of Habeas Corpus (*Doc. 1*) be DISMISSED with prejudice.

2.    A Certificate of Appealability be DENIED. *See* 28 U.S.C. § 2253(c)(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

DATED this 29th day of July, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

21